UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| WILLIS TOWERS WATSON, INNOVISK SERVICES, INC., FREBERG ENVIRONMENTAL, INC, <br><br>                                    Petitioners, <br><br> v. <br><br> ANTHONY CARROLL. <br><br>                                    Respondent. | Civ. No. 22-cv-09503 <br><br> **PETITION FOR AN ORDER CONFIRMING ARBITRATION AWARD** |

---

Petitioners, Willis Towers Watson plc ("WTW"), Innovisk Services, Inc. ("Innovisk"), and Freberg Environmental ("Freberg") (collectively "Willis" or "Petitioners"), by and through their undersigned counsel, petition this Court for an Order and Judgment, pursuant to Section 9 of the Federal Arbitration Act, 9 U.S.C. § 9, confirming and having judgment entered on the "Final Arbitration Award and Statement of Reasons on Motion for Summary Disposition" (the "Arbitration Award"), dated April 15, 2022, which was made by an arbitrator for the American Arbitration Association (AAA), dismissing all of Respondent Anthony Carroll's ("Carroll" or "Respondent") claims against Petitioners with prejudice after summary judgment briefings and oral argument thereto.

## PARTIES

1. Petitioner WTW is a publicly traded Irish company, and Petitioners Innovisk, a Delaware Corporation, and Freberg, a Colorado corporation, were affiliates companies of WTW at the time Respondent Carroll initiated the arbitration demand against Petitioners.

2. Upon information and belief, Respondent Carroll is a resident of Connecticut.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to the Federal Arbitration Act, 9 U.S.C. § 9, which governs the parties' dispute pursuant to the Employment Agreement executed by the parties. *See* Employment Agreement, annexed as **Exhibit 1**, at ¶ 5(o).

4. Venue is proper in this jurisdiction pursuant to 9 U.S.C. § 9 as the Employment Agreement between the parties does not specify a court in which such an application must be made, but does provide that Carroll's claims were to be governed by New York law as Carroll's regularly assigned office location was in New York. *See* Employment Agreement at ¶ 7. Moreover, the Demand for Arbitration filed by Carroll specifies that the hearing locale is to be New York City and, as such, venue is proper in this jurisdiction because the subject arbitration (which never went to an evidentiary hearing) took place in this District, in the County and State of New York. *See* April 21, 2020 Demand for Arbitration ("Arbitration Demand") with exhibits, annexed as **Exhibit 2.**

## BACKGROUND

5. On March 16, 2017, Carroll executed an Employment Agreement with Willis, which contained an incorporated offer letter, and made effective March 20, 2017. *See* Employment Agreement (Ex.1).

6. Claimant worked for Respondents in the position of Director for an energy Managing General Agent (MGA), which was being formed within Willis's group and he remained in that position from March 2017 through December 31, 2019, at which time the positions of Carroll and the underwriting team that reported to him were eliminated due to the unprofitability of the underwriting business. *Id.*; *See* Arbitration Demand (Ex. 2).

7. On or about April 21, 2020, Carroll filed an Arbitration Demand against Willis. *See* Arbitration Demand alleging that Willis breached its contracts with him. *See* Arbitration Demand (Ex. 2)

8. In Schedule A of the Arbitration Demand, Carroll alleged that Willis owed him $5,642,680 in damages based on a breaches of unexecuted documents and alleged representations that were external to his Employment Agreement. *Id.*; *See* Employment Agreement at ¶ 7.

9. Carroll's Employment Agreement with Willis, however, contains a clear and unequivocal merger and integration clause which provides that "[t]his Agreement sets forth the entire agreement between the parties and supersedes any and all prior agreements and understandings regarding the subject matter herein," and that the "Agreement may only be modified by a written instrument signed by both parties." *Id.*

10. Accordingly, on September 16, 2020, Willis filed a motion to dismiss Carroll's Arbitration Demand, pursuant to CPLR 3211(a)(1) and (a)(7), asserting that Carroll had failed to state a claim upon which relief could be granted as the merger clause within his Employment Agreement barred a breach of contract claim based on unwritten and/or unexecuted agreements discussed prior to, or after, the execution of his Employment Agreement, which was executed on March 16, 2017. *See Primex Int'l Corp v. Wal-Mart Stores*, 89 N.Y.2d 594, 600 (1997) ("A completely integrated contract precludes extrinsic proof to add to or vary its terms."); *Presbyt. Healthcare Servs. v. Goldman Sachs & Co.*, No. 15-cv-6579 (AJN), 2017 U.S. Dist. LEXIS 38911, at *35(S.D.N.Y. March 16, 2017) ("Under New York law, a subsequent contract… supersedes any earlier promises or contracts…[when] there 'is an integration and merger clause that explicitly indicates that the prior provision is superseded."); N.Y. C.L.S. Gen. Oblig. § 15-301(1) ("A written agreement or other instrument which contains a provision to the effect that it cannot be changed

orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent.").

11. In Carroll's memorandum of law in opposition to Willis's motion to dismiss, he did not make any arguments countering the fact that his breach of contract action was barred by the merger and integration clause in his Employment Agreement, but instead, faced with dismissal, altered his theory of liability and alleged that he was fraudulently induced to accept employment with Willis. *See* November 13, 2020 Decision on Motion to Dismiss and Order (the "Decision on the Motion to Dismiss"), annexed as **Exhibit 3**, at 15.

12. In the Arbitrator's Decision on the Motion to Dismiss, the Arbitrator agreed the Employment Agreement, with the offer letter that was incorporated thereto, was the only enforceable contract from a contract law perspective and found that Carroll was not entitled to damages based on unexecuted documents external to the Employment Agreement. *Id.* at 13-15.

13. The Arbitrator also noted that Carroll "effectively conced[ed]… that he [was] limited only to damages arising out of the Employment Agreement. *Id.* at 15.

14. The Arbitrator, however, allowed Carroll to proceed with his breach of contract theory for the severance damages ($173,070) that he alleged he was entitled to based on his Employment Agreement. *Id.*

15. Further, the Arbitrator allowed Carroll to proceed with his claim for fraud in the inducement if he re-pleaded the allegations of his Arbitration Demand and specified the allegedly resulting damages "with sufficient specificity to provide the basic parameters of the claims being made[] by November 30, 2020. *Id.* at 24.

-5-

16. In the Decision on the Motion the Dismiss, the Arbitrator expressly noted that the contract damages that Carroll was seeking for his breach of contract claim, based on unexecuted documents, were not available on a claim for fraudulent inducement. *Id.*

17. On November 29, 2020, Carroll submitted an Amended Complaint, in which he dropped his breach of contract claim in its entirety and proceeded only on a theory of a fraud in the inducement. *See* November 29, 2020 Amended Complaint, annexed as **Exhibit 4.**

18. Although Carroll's Amended Complaint was filled with irrelevant facts concerning unexecuted documents, such as alleged shareholder agreements, term sheets, and equity interests, which the Arbitrator ruled could not be the basis of his fraudulent inducement damages in the Decision on the Motion to Dismiss, Carroll eventually asserted that the basis of his fraudulent inducement claim was Willis's allegedly false promise to obtain $50,000,000 of insurance backing (capacity) for the first year of the MGA, and Willis's allegedly false promise to provide Carroll with a "state of the art" technology system to run the MGA. *Id.* at ¶¶ 28, 38, 45.

19. For approximately the following year, the parties engaged in the exchange of discovery, including the exchange of documents, and the taking of Carroll's deposition (Carroll never sought depositions).

20. Shortly after the conclusion of discovery, on January 21, 2022, Willis moved for summary judgment, pursuant to CPLR 3212, as Claimant's fraudulent inducement allegations were contradicted by the uncontroverted evidenced revealed throughout the course of discovery, including Carroll's own sworn deposition testimony.

21. The law provides that in order to adequately plead a claim for fraud in the inducement, a "plaintiff must prove a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to reply

upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." *Lama Holding Co. v. Smith Barney Inc.* 88 N.Y.2d 413, 421 (1996); *see also Perotti v. Becker, Glynn, Melamed & Muffly LLP*, 82 A.D.3d 495, 498 (1st Dept. 2011) ("For such a cause of action to be viable, it must be demonstrated that there was a false representation, made for the purpose of inducing another to act on it, and that the party to whom the representation was made justifiably relied on it and was damaged.")

22. The evidence revealed throughout discovery demonstrated that Carroll could not prove any element of a fraudulent inducement claim against Willis.

23. In their summary judgment motion, Willis demonstrated that Carroll had wholly failed to establish that there were any knowingly false misrepresentations made with the intent to misleadingly induce Carroll to accept employment with Respondents as the evidence clearly established that both Respondents and Carroll had clear goals for the MGA from the outset with regard to both capacity and state of the art technology, that both parties made significant efforts to bring those goals into fruition, and that despite these significant efforts the MGA proved to be unsuccessful due to poor market conditions.

24. Additionally, Willis contended that there could also be no "reasonable reliance" by Carroll upon the alleged oral representations because he was a "sophisticated businessperson" in the industry with over "30 years of experience in th[e] insurance industry." *See Shea v. Hambros PLC*, 244 A.D.2d 39, 47 (1st Dept. 1998) (the court held that plaintiff "can hardly claim with any credibility that he, a savvy businessman, entered into the resulting agreements lulled by faith or trust in the parties across the bargaining table, or that he unwittingly gave up some valued right in the bargain.").

25. Moreover, Willis also demonstrated that even if the Arbitrator were to find a material triable of fact regarding any alleged knowingly false misrepresentations or Carroll's reliance thereon, it was indisputable that Carroll did not suffer any "out of pocket" losses resulting from the alleged fraudulent inducement. *Pasternak v. Dow Kim*, 961 F. Supp. 2d 593, 596 (S.D.N.Y. 2013) ("In New York, damages in [these] fraud cases are limited by the 'out-of-pocket rule,' which provides that plaintiffs in fraud cases may only recover damages 'for what they lost because of the fraud, how what they might have gained.' Under the out-of-pocket rule, there can be no recovery of profits which would have been realized in the absence of fraud.")

26. Specifically, Willis demonstrated that the purported "foregone opportunities" that Carroll alleged regarding his fraudulent inducement claim were meritless as Carroll only had a proposed term sheet from one other company, Pen Underwriting, that was unsigned and clearly stated that it was not a formal offer of any sort. As such, the proposed term sheet could not form the basis of Carroll's fraudulent inducement claim as the loss of an alternative contractual bargain cannot serve as the basis for fraud or misrepresentation damages because the loss of the bargain is undeterminable and speculative. *See Lama Holding Co. v. Smith Barney Inc.* 88 N.Y.2d 413, 421 (1996); *Connaughton v. Chipotle Mexican Grill, Inc.*, 29 N.Y.3d 137, 142 (2017) (NY Courts consistently refuse to allow damages for fraud based on the loss of a contractual bargain and apply the "out-of-pocket rule," *i.e.,* plaintiff must allege that as part of his fraudulent inducement claim that he seeks recovery of monies he spent as a result of the fraud, not recovery of profits which would have been realized in the absence of fraud).

27. Moreover, Willis also demonstrated that even if the proposed term sheet from Pen Underwriting did constitute an alternative offer of employment of any sort, Carroll still failed to establish damages as the evidence unequivocally established that he would not have received any

additional income from Pen Underwriting than he did from Willis. Specifically, the evidence established that Carroll's compensation from Pen Underwriting between 2017-2019 (if the term sheet constituted any type of employment offer) would have been $1,858 million versus the $1,975 million that he received from Willis for that same time period, which Carroll confirmed during his sworn deposition testimony.

28. In response to Willis's Motion for Summary Judgment, Carroll did not attempt to contradict the evidence but instead set forth an entirely new alleged misrepresentation and claimed that Willis made representations that if they could not receive certain milestones, such as capacity and technology, there were executive level benefits that would be due to Claimant, such as equity and/or acceleration of benefits.

29. This assertion, however, was likewise contradicted by the evidence as Willis established that at the time Carroll signed the Employment Agreement, it was clear that the parties agreed that items such as equity and/or acceleration of benefits would be agreed upon at a future time.

30. The parties then proceeded to oral argument on the summary judgment motion with the Arbitrator and made supplemental submissions to the Arbitrator after the oral argument for the purpose of providing Carroll with an additional opportunity to cite to evidence within the record that supported his fraudulent inducement claim.

31. On April 15, 2022, the Arbitrator, the Honorable Donald A. Kessler (Ret.), issued the Final Award and Statement of Reasons on Motion for Summary Disposition (the "Arbitration Award") (annexed as **Exhibit 5**), in which he granted Willis's motion for summary judgment motion.

32. Specifically, the Arbitrator awarded as follows:

-9-
28802339v.2

a) Claimant's sole remaining claim of Fraud in the Inducement is dismissed with prejudice and an Award is hereby entered in favor of Respondents dismissing Claimant's Arbitration Demand with Prejudice.

b) The administrative fees of the American Arbitration Association totaling $2,950.00 and the compensation of the arbitrator totaling $43,035.00 shall be borne as incurred.

c) The Final Award is in full satisfaction and settlement of all claims submitted in this arbitration and disposes of each and every claim of the Claimant. Any relief not awarded herein is hereby expressly denied.

**CLAIM FOR RELIEF**
**(Confirmation of Arbitration Award)**

33. Willis repeats and realleges each and every allegation contained in the above paragraphs, inclusive, and incorporates them hereby by reference.

34. Pursuant to 9 U.S.C. § 9, this Petition is timely brought within one year of the delivery of the April 15, 2022 Arbitration Award to the parties.

35. The Arbitration Award has not been vacated, modified, or corrected by order of any court of competent jurisdiction, as prescribed in 9 U.S.C. § 10 and 9 U.S.C. § 11, and is still in full force and effect within the three month period specified under 9 U.S.C. § 12.

36. Moreover, none of the grounds for vacating, modifying, or correcting the Arbitration Award exist.

37. Pursuant to 9 U.S.C. § 9, Petitioner is entitled to a judgment confirming the Arbitration Award.

38. Accordingly, and as explained more fully in the accompanying Memorandum of Law, the Petition by Willis to confirm the Arbitration Award should be granted in its entirety, and the Arbitration Award should be confirmed pursuant to Section 9 of the Federal Arbitration Act, 9 U.S.C. § 9.

**WHEREFORE**, Petitioners respectfully request that this Court enter an Order confirming the Arbitration Award entered on April 15, 2022.

Dated: New York, New York
November 7, 2022

                                      Respectfully submitted,
                                      **WHITE AND WILLIAMS LLP**

By: _/s/ Scott Casher_
        Scott H. Casher, Esq.
        Sabina Corrado, Esq.
        7 Times Square, Suite 2900
        New York, NY 10036
        Phone: 212-244-9500
        *Attorneys for Petitioners*