UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
WILLIS TOWERS WATSON PLC; FREBERG      :
ENVIRONMENTAL, INC.; and INNOVISK      :
SERVICES, INC.,                        :
               Petitioners,      :    **OPINION AND ORDER**
  v.      :
                     :    22 CV 9503 (VB)
ANTHONY CARROLL,      :
               Respondent.      :
---------------------------------------------------------------x

Briccetti, J.:

Petitioners Willis Towers Watson plc ("WTW"), Innovisk Services, Inc. ("Innovisk"),

and Freberg Environmental, Inc. ("Freberg") move, pursuant to the Federal Arbitration Act

("FAA"), 9 U.S.C. § 9, to confirm a final arbitration award issued by Hon. Donald A. Kessler,

J.S.C. (Ret.) (the "Arbitrator"), on April 15, 2022, dismissing respondent's arbitration demand

against petitioners with prejudice by summary disposition.  (Doc. #1 ("Petition")).  Petitioners'

motion is unopposed.

For the reasons set forth below, the motion is GRANTED and the final arbitration award

is CONFIRMED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.[1]

## BACKGROUND

This case arises out of an employment contract between Freberg[2] and respondent dated

---

[1]    The Petition states the Court has jurisdiction pursuant to the FAA.  (Petition ¶ 3).
However, the FAA "does not itself create jurisdiction" over a motion to confirm an arbitration
award.  Badgerow v. Walters, 142 S. Ct. 1310, 1314 (2022).  "Rather, the federal court must
have . . . an independent jurisdictional basis to resolve the matter."  Id.  Nevertheless, here, the
Court has subject matter jurisdiction by virtue of diversity of citizenship.  (See Doc. #13).

[2]    The Employment Agreement specifies that references to "Employer/Willis" refer to
Freberg "and/or [Freberg's] parent companies and other affiliates, as well as their successors and
assigns."  (Employment Agreement at 1 n.1).  WTW and Innovisk were affiliates of Freberg at

March 20, 2017.  (Doc. #1-1 (the "Employment Agreement")).

I.        The Employment Agreement

The Employment Agreement appends and incorporates an offer letter addressed to

respondent and dated March 9, 2017.  (Employment Agreement at ECF 8).[3]  The offer letter

provides respondent would commence employment for petitioners as a "Director"[4] on March 20,

2017, and sets forth the terms of respondent's compensation.  (Id.).  Specifically, the offer letter

provides for an annual base salary of $500,000, to be reviewed annually; a signing bonus of

$300,000, which petitioners could claw back in certain circumstances; and participation in "an

incentive compensation program . . . under which [respondent] may become eligible to receive"

cash or equity awards in petitioners' discretion.  (Id. at ECF 9).  The offer letter provides

petitioners could "adjust or modify" respondent's compensation and benefits at any time.  (Id. at

ECF 8 n.1).

The Employment Agreement states respondent's employment was at-will and could be

terminated by petitioners, with or without cause, upon fifteen days prior written notice or pay in

lieu of notice.  (Employment Agreement ¶ 4).

The Employment Agreement includes the following merger clause:  "This Agreement

sets forth the entire agreement between the parties and supersedes any and all prior agreements

and understandings regarding the subject matter herein.  This Agreement may only be modified

---

the time respondent initiated the arbitration demand against petitioners.  (Petition ¶ 1).

[3]        "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

[4]        Respondent described his title in his arbitration demand and other materials as "Chief Executive Officer and Chief Underwriting Officer" for a new business venture, an energy-focused managing general agent.  (See, e.g., Doc. #1-2 ("Arbitration Demand") at ECF 3).

by a written instrument signed by both parties." (Employment Agreement ¶ 7)

Petitioners unilaterally terminated respondent's employment on December 31, 2019.

II.     The Arbitration

On April 21, 2020, respondent filed the Arbitration Demand claiming petitioners breached various agreements respecting respondent's employment and compensation separate from the Employment Agreement. He sought damages of $5,642,680. (Arbitration Demand at ECF 4–5).

On September 16, 2020, petitioners moved to dismiss the Arbitration Demand, arguing the merger clause barred respondent from arguing he was entitled to compensation for any alleged breach of agreements or promises outside the Employment Agreement. (Petition ¶ 10).

In opposition, respondent argued he was promised a fifteen percent equity ownership stake in a new venture that petitioners would fund for at least seven years, among other promises, but that these negotiations were not reflected in the Employment Agreement. (Doc. #1-3 ("MTD Decision") at 2, 6). Respondent claimed he was persuaded to sign the Employment Agreement without these terms as a generic placeholder for a more detailed agreement to be executed later. (Id. at 3, 6). Thus, respondent asserted a fraudulent inducement claim based on petitioners allegedly making these false promises in order to induce him to sign the Employment Agreement that excluded these promises.

On November 13, 2020, the Arbitrator issued an order dismissing respondent's breach of contract claim for payments in respect of his alleged fifteen percent ownership interest and payments in respect of a remaining minimum contract term, but determined he had stated a breach of contract claim to the extent there were unpaid amounts under the Employment Agreement. (MTD Decision at 14–15). The Arbitrator also permitted respondent to amend the

Arbitration Demand to replead his fraudulent inducement claim.  (Id. at 24–25).

On November 29, 2020, respondent submitted an amended arbitration demand, which only asserted a fraudulent inducement claim.  (Doc. #1-4 ("Amended Arbitration Demand")).[5]

The parties engaged in discovery, including document discovery and respondent's deposition.  The Arbitrator heard oral argument on March 22, 2022.  (Doc. #1-5 ("Final Award") at 2).

On April 15, 2022, the Arbitrator issued the Final Award, which granted petitioners' motion for summary disposition and dismissed respondent's sole remaining claim for fraudulent inducement.  (Final Award at 2–3).

In the Final Award, the Arbitrator explained that respondent had failed to raise a genuine issue of material fact that petitioners had made any promise that was false or that petitioners did not intend to fulfill.  For example, respondent alleged petitioners falsely promised to provide $50 million of funding to the venture.  However, petitioners produced evidence showing the $50 million funding threshold was a joint goal vigorously pursued by all parties.  In fact, the evidence showed petitioners and respondent "considered, reviewed, or approached many insurers and reinsurers in over 250 markets around the world to convince them to invest $50M," but were ultimately unsuccessful.  (Final Award at 11).  Respondent also admitted during his deposition that he did not think petitioners lied or intentionally misled him about the $50 million capacity goal, only that they failed to follow through.  (Id. at 12).

Likewise, respondent claimed petitioners falsely promised to provide him with a state-of-the-art technology system to run the new venture.  However, the Arbitrator determined petitioners hired the professional respondent selected to create the technology system, but that

---

5       The Amended Arbitration Demand is styled as a complaint.

the professional failed to create a satisfactory system.  Respondent also acknowledged in a declaration that petitioners "engaged with a company to provide such state-of-the-art technology system, however that company failed."  (Final Award at 24).  These efforts, the Arbitrator found, were "antithetical to [a] claim that [petitioners] did not intend to build out a state-of-the-art technology system," and disproved respondent's fraudulent inducement claim.  (Id.).

Finally, respondent claimed he was fraudulently induced by promises that he would receive an acceleration of payment in respect of a fifteen percent equity interest in the new venture upon a termination of employment without cause.  However, the Arbitrator reviewed emails respondent sent when the Employment Agreement was negotiated that indicated "all aspects of [the] agreement [on] . . . ownership share- Energy MGA, Equity Grant, . . . acceleration events" were "to be agreed" in the future.  (Final Award at 26).  Thus, the Arbitrator found respondent's "own words undermine his argument that a definitive promise was made to him to induce him to sign the Employment Agreement."  (Id. at 28).

The Arbitrator also concluded respondent failed to prove he suffered compensable damages.  For example, respondent claimed he lost another employment opportunity because he was fraudulently induced to accept employment with petitioners.  However, during his deposition, respondent admitted the compensation he would have earned through the alternative employment was less than what he actually did earn from petitioners during the same time period.  (Final Award at 15–16).  The Arbitrator also found the term sheets outlining compensation from the alternative employer, dated approximately ten months before he signed the Employment Agreement, were preliminary non-binding offers that were too speculative to serve as a basis for out-of-pocket damages.  (Id. at 31–32).

On November 7, 2022, petitioners filed this motion to confirm the Final Award.  (See

Petition).  The same day, Petitioners served a copy of the Petition and supporting documents on

respondent's counsel.  (Doc. #3).  Respondent did not respond to the Petition or file a motion to

vacate, modify, or correct the Final Award.  Nor has respondent otherwise appeared in this case.

## DISCUSSION

The Final Award must be confirmed.

Section 9 of the FAA provides:  "at any time within one year after the [arbitration] award

is made any party to the arbitration may apply to the court so specified for an order confirming

the award, and thereupon the court must grant such an order unless the award is vacated,

modified, or corrected."  See 9 U.S.C. § 9.

"Federal court review of an arbitral judgment is highly deferential."  Pike v. Freeman,

266 F.3d 78, 86 (2d Cir. 2001).[6]  A district court's "confirmation of an arbitration award is a

summary proceeding that merely makes what is already a final arbitration award a judgment of

the court."  D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006).  Indeed, "[a] court's

review of an arbitration award is . . . severely limited."  Scandinavian Reins. Co. v. Saint Paul

Fire & Marine Ins. Co., 668 F.3d 60, 71 (2d Cir. 2012).  "[A] district court will enforce the

award as long as there is a barely colorable justification for the outcome reached."  Kolel Beth

Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr., 729 F.3d 99, 103–04 (2d Cir. 2013).

When a petition to confirm an arbitration award is unopposed, courts should treat the petition "as

akin to a motion for summary judgment."  D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d at 109.

The FAA permits vacatur of an arbitration award under four narrow circumstances:

(1) where the award was procured by corruption, fraud, or undue means; (2) where
there was evident partiality or corruption in the arbitrators, or either of them;

---

[6]     Unless otherwise indicated, case quotations omit all internal citations, quotation marks,
footnotes, and alterations.

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).  "In addition, as judicial gloss on these specific grounds for vacatur of arbitration awards, . . . the court may set aside an arbitration award if it was rendered in manifest disregard of the law."  Schwartz v. Merrill Lynch & Co., Inc., 665 F.3d 444, 451 (2d Cir. 2011).  "An arbitration award manifestly disregards the law only if (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well-defined, explicit, and clearly applicable to the case."  Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co., 57 F.4th 372, 383 (2d Cir. 2023).

Here, the Petition is unopposed and petitioners have demonstrated there is no genuine issue of material fact precluding judgment in their favor.  The Final Award sets forth the Arbitrator's factual findings and legal conclusions which, together with the Petition and supporting exhibits, demonstrate more than a barely colorable justification for the decision.  The record before the Court does not suggest any statutory basis for vacatur exists, nor that the Final Award was rendered in manifest disregard of the law.

Accordingly, the Final Award must be confirmed.

**CONCLUSION**

The motion to confirm the final arbitration award dated April 15, 2022, is GRANTED,

and the award is CONFIRMED.  <u>See</u> 9 U.S.C. § 9.

The Clerk is instructed to (i) enter judgment in petitioners' favor confirming the final

arbitration award issued on April 15, 2022, and (ii) close this case.

Dated: March 30, 2023
      White Plains, NY

                                        SO ORDERED:

                                        Vincent L. Briccetti
                                        United States District Judge